701 So.2d 676 (1997)
Kristy M. LEE
v.
STATE of Louisiana, Through The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al.
No. 97-C-0350.
Supreme Court of Louisiana.
October 21, 1997.
Rehearing Denied November 21, 1997.
Duncan S. Kemp, III, Amite, for Applicant.
Donald W. Price, Paul H. Due, Due Caballero, Perry, Price & Guidry, Baton Rouge, Joseph H. Simpson, Simpson & Simpson, Amite, G. Stephen Covert, Baton Rouge, for Defendant.
*677 MARCUS, Justice[*].
Kristy M. Lee and Ondria Lee brought suit against the Department of Transportation and Development ("DOTD") to recover damages resulting from an automobile accident at the intersection of Louisiana Highways 442 and 43.[1]
On February 10, 1991 at approximately 5:30 p.m., Kristy Lee and her sister, Ondria, were traveling westbound on Highway 442 from Kentwood to Baton Rouge. The route was one with which the sisters were fairly familiar, having taken it four or five times previously. Kristy, who was driving, had just turned off Interstate 55 and was proceeding in a westerly direction with the sun in her eyes at approximately fifty-five miles per hour along the five mile stretch of road leading up to the intersection of Highways 442 and 43. Along the way, the sisters should have passed several signs indicating the upcoming junction; a "STOP AHEAD" sign, a sign advising "JCT LA 43," and a directional sign pointing the way to Albany and Montpelier. In addition, the westbound approach to the intersection was guarded by a stop sign (36 inches by 36 inches) and two flashing red beacons (with twelve inch lenses). The stop sign was located on a painted, raised island. It is disputed whether the "STOP AHEAD" sign was in place on the date of the collision. The accident occurred when Kristy entered the intersection, without slowing, and struck a northbound pickup truck on Highway 43.
After trial on the merits, the trial judge determined that the "STOP AHEAD" sign was necessary to properly warn motorists of the need to stop at the intersection, particularly in situations where other traffic signals were obscured by the setting sun. The judge also found that the sign was missing on the date of the accident. The trial judge determined that Kristy was seventy (70%) percent at fault in connection with the accident and attributed the remaining thirty (30%) percent to DOTD for failing to discover and correct the deficiency created by the missing sign within a reasonable amount of time. The judge awarded damages in favor of Kristy in the amount of two hundred thousand ($200,000) dollars, subject to a reduction based upon her percentage of fault, and awarded seven thousand five hundred ($7,500) dollars in damages to Ondria. DOTD appealed. The court of appeal, with one judge dissenting in part, affirmed. The dissenting judge would not have held DOTD liable. Upon DOTD's application, we granted certiorari to review the correctness of that decision.[2]
The sole issue presented for our consideration is whether the court of appeal erred in holding DOTD liable for the accident causing plaintiffs' injuries.
In situations such as this, Louisiana law provides two theories under which DOTD may be held liable for damages: negligence, based on La. Civ.Code art. 2315,[3] and strict liability, based on La. Civ. Code art. 2317.[4] Traditionally, these theories could be distinguished because, under strict liability, a plaintiff was relieved of proving that the owner or custodian of a thing which caused damage knew or should have known of the risk involved. Campbell v. Dept. of Transp. and Dev., 94-1052, p.5 (La.1/17/95), 648 So.2d 898, 901. La. R.S. 9:2800 eviscerates this distinction in claims against public entities, however, by requiring proof of actual or constructive notice of the *678 defect which causes damage.[5] Thus, the burden of proof is now the same under either theory. The plaintiff must establish that the thing which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, that defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiff's injuries. Bessard v. State, Dept. of Transp. and Dev., 94-0589, p.3 (La.11/30/94), 645 So.2d 1134, 1136; Oster v. Dept. of Transp. and Dev., 582 So.2d 1285, 1288 (La.1991).
It is undisputed that DOTD had custody of Highway 442, Highway 43, and the intersection at which the accident occurred. Pursuant to La. R.S. 48:21(A), DOTD has a statutory duty to "study, administer, construct, improve, maintain, repair, and regulate" the use of public highways and roads. As such, DOTD is required to keep the state's highways in a reasonably safe condition. Campbell, 94-1052 at p.5, 648 So.2d at 901; Hunter v. Dept. of Transp. and Dev., 620 So.2d 1149, 1151 (La.1993). This includes a duty with regard to signs and traffic signals along the road. It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public. Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1156 (La. 1988). DOTD cannot, however, guarantee the safety of all travelers. Id. Nor can it be held responsible for all injuries resulting from any risk posed by the roadway or its appurtenances, only those caused by an unreasonable risk of harm to others. See Entrevia v. Hood, 427 So.2d 1146, 1149 (La. 1983). Whether DOTD breached its duty to the motoring public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on the facts and circumstances of the case. Campbell, 94-1052 at p.5, 648 So.2d at 901-02.
At trial, both plaintiffs and defendant offered testimony to prove the existence of certain traffic signs along Highway 442. It is undisputed that several directional signs, as well as traffic beacons and a stop sign were in place on the date of the accident. The parties do not agree on the presence of a "STOP AHEAD" sign, although DOTD admits it should have been in place on the westbound approach to the intersection.
Mr. Howard Dale Thomas, a witness for the plaintiffs, testified that his home was located on Highway 442 directly across from the "STOP AHEAD" sign. He claimed that it had been missing for some time. DOTD presented the testimony of Trooper James Bentley, investigating officer at the accident, who claimed that there had been a warning sign in place on the date of the accident. Trooper Bentley admitted, however, that this information was not included in his accident report. From this conflicting testimony, the trial judge found that the "STOP AHEAD" sign was missing. We are unable to say that the trial judge was clearly wrong in this factual determination. Our analysis is thus based on the assumption that, in February of 1991, there was no "STOP AHEAD" sign warning westbound motorists of the stop at Highway 43.
*679 Plaintiffs contend that the absence of the sign was a significant factor in causing their accident. Had the "STOP AHEAD" sign been present, Kristy Lee argues that she would have been warned of both the approaching intersection and the requirement that she yield the right of way in sufficient time to bring her vehicle to a stop.
The evidence presented at trial showed that a "STOP AHEAD" sign is used on an approach to a stop sign that is not visible for a sufficient distance to permit a driver to bring his vehicle to a stop. According to the Manual on Uniform Traffic Control Devices, a warning sign would be appropriate where a stop sign is not visible from at least four hundred and fifty feet. The Manual goes on to say that obstructions causing this type of limited visibility may be either permanent or intermittent. Additionally, warning signs may be used for emphasis where there is poor observance of the stop sign (i.e., in situations where drivers are not responding to the stop sign). In all situations, the decision to erect a warning sign is discretionary on the part of DOTD.
For reasons unknown, DOTD made the decision to place a "STOP AHEAD" sign along both the eastbound and westbound routes of Highway 442. Given the surrounding circumstances, however, it is not reasonable to conclude that the absence of such a sign created an unreasonable risk of harm to motorists such as Kristy Lee. In the case before us, the intersection was guarded by two flashing red beacons and a stop sign on a painted, raised island. Evidence showed that, at the time of the collision, the westbound approach to the Highway 43 junction was straight, clear and free of obstructions. Dr. Joseph David Blaschke, an expert for DOTD, testified that the stop sign at that intersection is normally visible from a distance of over eight hundred feet. The glare from the setting sun may well have impaired Kristy Lee's view of the road and traffic signals. Nevertheless, the evidence indicated that she made no effort to compensate for this decreased visibility. Neither Ondria nor Kristy could recall braking or slowing down prior to reaching the intersection. Ondria testified that the sisters did not discuss the sun condition and Kristy stated that she could not remember using her visor to block the glare. In addition, there were other signs along the route which should have indicated to an alert and cautious driver that she was approaching an intersection.
Surely, DOTD cannot be held responsible for all injuries on the state's highways that result from careless driving in the face of adverse weather conditions. Temporary sun blindness, like visual impairment caused by fog or heavy rain, is a physical condition with which drivers must learn to contend in a safe and responsible manner. DOTD's decision to erect a warning sign was in no way a guarantee of the safety of the intersection of Highways 442 and 43. Likewise, it is unreasonable to conclude that, in the absence of the warning sign, the intersection was rendered unreasonably dangerous. To so find would place an undue burden on DOTD in the exercise of its discretionary power to erect such warnings.
Because we find that the condition of the intersection did not present an unreasonable risk of harm under the facts of this case, we need not determine whether DOTD had actual or constructive notice of the missing sign for purposes of La. R.S. 9:2800. Plaintiffs failed to meet the burden of proving DOTD's liability under La. Civ.Code arts. 2315 and 2317. Therefore, they are not entitled to recovery under either theory of fault.
We find that the trial judge was clearly wrong in holding DOTD 30% at fault for plaintiffs' accident. The sole cause of the accident was the negligence of Kristy Lee. The court of appeal erred in affirming the judgment against DOTD. We must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and judgment is rendered in favor of the State of Louisiana, through the Department of Transportation and Development, and against Kristy M. Lee and Ondria Lee, dismissing their suit at their cost.
NOTES
[*] Calogero, C.J, not on panel. Rule IV, Part II, § 3.
[1] Kristy M. Lee supplemented her original petition to add the claims of Ondria Lee against DOTD.
[2] 97-0350 (La.3/27/97), 692 So.2d 379.
[3] Article 2315 provides:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.
[4] Article 2317 provides:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....
[5] At the time of plaintiffs' accident, La. R.S. 9:2800 provided:

9:2800 Limitation of liability for public bodies
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.