| ¡.SIMON, Judge Pro Tem.
Kevin Thomas Brow and Carol Lee Brow appeal a judgment dismissing their claim for damages against the State of Louisiana, through the Department of Transportation and Development (DOTD).
FACTS AND PROCEDURAL HISTORY
This case arises out of a collision between a vehicle driven by Kevin Thomas Brow, in which his wife, Carol Brow, was a passenger (the Brows), and a vehicle driven by Isaac Cummings (Cummings) on U.S. Highway 61 in East Baton Rouge Parish. On December 9, 1988, at 11:30 p.m., the Brows were traveling north, immediately behind a car driven by Charles Spillman (Spillman). A few minutes before, Cummings had entered Highway 61 at its intersection with Louisiana Highway 64, also known as Mount Pleasant Road. He turned left into the wrong lane and traveled south for approximately 4.3 miles. When Spillman saw the Cummings vehicle headed straight for him in his lane of travel, he veered to the shoulder. The Brows were hit head-on by the Cummings vehicle.
The Brows brought suit against various parties and their insurers, all of whom *271 settled or were dismissed, with the exception of DOTD. Following a bifurcated trial on the issue of the liability of DOTD, the trial court found no liability on the part of DOTD and dismissed the Brows’ suit with prejudice. In reasons for judgment, the court found it was more likely than not that the proper “Wrong Way/Do Not Enter” signs were posted at the intersection of Highway 61 and Highway 64 on the night of the accident, and further found that deficiencies in signage, if any, were not the cause-in-fact of the Brows’ injuries.
The Brows appeal and assign two errors.
1.
The trial court erred in finding the defendant state had properly placed and maintained all appropriate and required traffic control devices at a highway intersection and along one leg of one of the highways leading to the accident site.
2.
|3The trial court erred in dismissing this tort suit against the state, which should have been held liable along with a negligent driver for the damages sustained by the innocent plaintiff victims.
LEGAL PRINCIPLES AND STANDARD OF APPELLATE REVIEW
A plaintiff may recover damages from DOTD under a theory of negligence based on La. C.C. art. 2315 or a theory of strict Lability based on La. C.C. art. 2317 and La. R.S. 9:2800. Under either theory, the elements of proof are the same. A plaintiff must show that: (1) DOTD had custody of the thing that caused the plaintiffs injuries or damages; (2) the thing was defective, because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and (4) the defect in the thing caused plaintiffs injuries. Lee v. State, through Dep’t of Transp. & Dev., 97-0350 (La.10/21/97), 701 So.2d 676, 678; Sevario v. State, through Dep’t of Transp. & Dev., 98-1302 (La.App. 1 Cir. 11/10/99), 752 So.2d 221, 231, writs not considered, 99-3638, 00-0044 (La.4/7/00), 759 So.2d 81 and 82, writ denied, 99-3457 (La.4/7/00), 759 So.2d 760. To recover, plaintiff bears the burden of proving each required element; failure to prove any one is fatal to the case. Netecke v. State, through Dep’t of Transp. & Dev., 98-1182, 98-1197 (La.10/19/99), 747 So.2d 489, 494.
Each of the first three elements requires a factual determination. A court of appeal may not disturb the factual conclusion reached by a trial court in the absence of manifest error or unless the particular finding of fact was clearly wrong. The two-part test for the appellate review of factual findings is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. Stobart v. State, through the Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993). When |4findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings. However, should documents or objective evidence so contradict the witness’s story, or the story itself be so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
*272 Proof of the fourth element— causation — involves both factual and legal determinations. The supreme court has adopted a duty-risk analysis for a determination of legal cause in a particular case. Under this analysis, the plaintiff must show that: (1) the conduct in question was a cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to the plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of protection afforded by the duty breached. Berry v. State, through Dep’t of Health and Human Resources, 93-2748 (La.5/23/94), 637 So.2d 412, 414; Lavine v. Jackson, 97-2804 (La.App. 1 Cir. 12/28/98), 730 So.2d 958, 961, writ denied, 99-0898 (La.5/28/99), 743 So.2d 677, cert. denied, 528 U.S. 973, 120 S.Ct. 417, 145 L.Ed.2d 326 (1999). Failure to prove any one of the elements results in a determination of no liability. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318, 326.
The first determination in the duty-risk analysis is cause-in-fact. Boykin v. Louisiana Transit Co., Inc., 96-1932 (La.3/4/98), 707 So.2d 1225, 1230. The inquiry to be made is whether the accident would have occurred, but for the defendant’s alleged substandard conduct or, when concurrent causes are involved, whether the defendant’s conduct was a substantial factor in bringing about the accident. Daye v. General Motors Corp., 97-1653 (La.9/9/98), 720 So.2d 654, 659. The determination of cause-in-fact is factual and subject to the manifest error/clearly wrong standard of review. Duty is a question of law. The inquiry is whether the plaintiff has any law — statutory, jurisprudential, or arising from the general principles of fault — to support his claim. Faucheaux v. Terrebonne Consol. Gov’t, 615 So.2d 289, 292 (La.1993); Clark v. Dep’t of Public Safety and Corrections, 96-2737 (La.App. 1 Cir. 2/20/98), 716 So.2d 1, 3, writ denied, 98-1201 (La.6/19/98), 720 So.2d 1216. The legal cause or scope-of-duty inquiry is a legal question. See Todd v. State, through Dep’t. of Social Services, 96-3090 (La.9/9/97), 699 So.2d 35, 39.
REVIEW OF EVIDENCE BELOW
The trial court held that the plaintiffs failed to prove two of the four elements required for recovery against DOTD — defect and legal cause. We affirm.
1. Custody
It is undisputed that DOTD had custody of the intersection of Highway 61 and Highway 64, and of Highway 61 from that intersection to the accident site. Pursuant to La. R.S. 48:21(A), DOTD has a statutory duty to “study, administer, construct, improve, maintain, repair, and regulate” the use of public highways and roads. It is well settled that a governmental authority that undertakes to control traffic at an intersection must exercise a high degree of care for the safety of the motoring public. Lee, 701 So.2d at 678; Briggs v. Hartford Ins. Co., 532 So.2d 1154, 1157 (La.1988).
2. Defect
We next address the trial court’s determination that plaintiffs failed to prove the second element for recovery; namely, that the intersection was defective, because it had a condition that created an unreasonable risk of harm. Plaintiffs assign this determination as clearly wrong, contending that the testimony of Cummings, his passenger, Anna Jones, and all of the witnesses whom they characterize as “independent,” was to the effect that there were no signs in place. Additionally, James R. Clary, accepted by the court as an expert in highway design, highway safety, and highway signage, testified that the signs in place in 1996 and thereafter, and presumably those which existed in 1988, did not meet the requirements of the Manual on Uniform Traffic Control Devices (MUTD) adopted by the Legislature pursuant to La. R.S. 32:235.
*273 Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883. Defendant’s witness, James H. Lee, DOTD Operations Specialist in charge of sign maintenance, testified that it was his duty to inspect all signs periodically, to respond to reports of downed or damaged signs, and to see that any defective signs were repaired or replaced. He presented photographs of the “Wrong Way/Do Not Enter” signs taken shortly after the accident. They display, on the reverse, the date “5-29-84” and the initials of the sign installers — indications that proper signs were installed or last modified nearly five years earlier. According to the MUTD, which was introduced into evidence, the signs are not mandatory, but only permissive for signalized intersections. Failure to adhere to standards is a relevant factor, in determining the ultimate issue of whether a roadway is unreasonably dangerous, but no court in Louisiana has found that the AASHTO policy guidelines or MUTD standards must be met at every intersection in the state. See Aucoin v. State, through Dep’t of Transp. & Dev., 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62, 66; Dill v. State, Dep’t of Transp. & Dev., 545 So.2d 994, 995 (La.1989); Pesson v. Reynolds, 97-0150 (La.App. 1 Cir. 11/13/98), 727 So.2d 507, 511, writ denied, 99-0875 (La.5/7/99), 741 So.2d 657.
Although Cummings and his passenger, Anna Jones, testified by deposition that there were no signs in place on December 9, 1988, they were unobservant reporters concerning many of the conditions that evening. Jones testified that they had both been drinking; Cummings was adamant that he had not. Jones stated, “I really didn’t know what happened because I just laid back on the seat.” Cummings is unable to read. Additionally, two of the witnesses characterized by the plaintiffs as “independent,” Mike Vierra and Ronnie Bourgeois, had close personal connections to the Brows. Contrary to the assignment of error, the only truly independent observer, Felix Stevenson, did not testify that there were no signs; he testified that he saw none. Stevenson observed Cummings turn into the wrong lane, watched from his own (proper) lane, and tried unsuccessfully to attract Cummings’ attention. But because Stevenson had entered Highway 61 at Mount Pleasant Road from the direction opposite to that of the Cummings vehicle, he was not at a vantage point to see the signs at issue.
]7The record is replete with evidence of other safety devices at the intersection and along Highway 61. There were two sets of semaphore traffic lights over the intersection; there were imbedded road reflect or buttons, with red side exposed; there were some, if not all, signs. Applying the manifest error/clearly wrong standard of review to the entire record below, there is ample evidence to support the finding of the trial court that deficiencies in signage, if any, did not render this intersection, and the highway from the intersection to the accident site, unreasonably dangerous.
3. Notice
The trial court did not specifically address the requirement that the plaintiffs prove DOTD had actual or constructive knowledge of a defect and failed to take corrective measures in a reasonable time. In view of the affirmance of the determinations on defect and legal cause, it is not necessary to address this issue further.
4. Legal Cause
The trial court also found that Cummings’ gross negligence and lack of reasonable care and prudence, rather than any negligence of DOTD, were the sole legal cause .of this accident. Review of this finding employs the four-part test of Berry, 637 So.2d at 414.
The cause-in-fact of this accident is not in dispute; Cummings would not have collided with the Brow vehicle if he had not entered the wrong lane of travel. Nor is *274 there any dispute that the state has a duty to post signs designed to prevent this harm. There is also no question that this duty is owed to this particular class of plaintiffs (motorists driving properly) and to prevent this particular harm (traffic accidents). It is the fourth part of the Berry test, legal cause or scope of duty, which the trial court found defeats the Brows’ claim.
Whereas cause-in-fact involves a factual determination reviewed under the manifest error/clearly wrong standard, legal cause involves a purely legal question. Todd, 699 So.2d at 39; Paul v. State Employees Group Benefit Program, 99-0897 (La.App. 1 Cir. 5/12/00), 762 So.2d 136, 143. The inquiry is fact sensitive and | sultimately turns on a question of policy as to whether the particular risk falls within the scope of duty. In the Berry language, this court must determine whether or not, at the point of this accident, this plaintiff was within the scope of protection afforded by signage.
The accident occurred at a point far removed from the intersection. As the trial court described the events:
... Cummings traveled in the wrong direction for approximately 4.3 miles until the collision with plaintiffs’ vehicle. During this 4.3 mile stretch of highway, Cummings failed to observe four sets of wrong way/do not enter signs. Additionally, Cummings failed to pay attention to efforts by other motorists warning Cummings of his dangerous path in the wrong lanes of travel. Through testimony in depositions, it was established that eight or nine oncoming cars swerved to miss the Cummings vehicle prior to the accident. Also a following motorist, Stevenson, followed the Cummings vehicle and attempted to alert Cummings by flashing his lights and sounding his horn. Had Cummings paid attention to his surroundings, he would have certainly noticed either the four sets of wrong way/do not enter signs, the oncoming vehicles leaving the highway in [an] effort to avoid collision [or] the efforts of Stevenson to alert him and taken corrective actions accordingly.
In addition to the evidence of gross negligence noted by the trial court, Cummings also failed to heed the semaphore signals controlling a major intersection, the solid white line running along the shoulder, the yellow line along the median of the southbound lane, the reflector buttons imbedded in the highway, and Stevenson’s flashing headlights and sounding horn.
DOTD cannot guarantee the safety of all travelers or be responsible for all injuries on the state’s highways that result from grossly negligent driving. Also, a risk of a particular injury may not be within the scope of a duty where there is an intervening cause. As this court stated in Paul, 762 So.2d at 143:
Whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether “too much else has intervened — time, space, people, and bizarreness.” (citations omitted).
This wreck was the result of the events that intervened between Cummings’ entrance to Highway 61 and the scene of the accident and was not legally caused by DOTD. The judgment of the trial court is legally correct.
| aDECREE
For the foregoing reasons, the trial court judgment is affirmed. The appellants are cast for costs of the appeal.
AFFIRMED.